UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

JACQUELINE BIRCHFIELD,                )
                                      )
              Plaintiff,              )
                                      )
v.                                    )          No. 2:19-CV-005
                                      )
DEUTSCHE BANK NATIONAL TRUST          )
COMPANY, *et al*.                     )
                                      )
              Defendants.             )


## MEMORANDUM OPINION

This civil action is before the Court on Plaintiff's motions for recusal [docs. 59, 66],[1] Plaintiff's motion to amend [doc. 34], Plaintiff's miscellaneous motions [docs. 9, 10, 25], and Defendants' motions to dismiss [docs. 3, 14].  All of these motions are now ripe for the Court's review.  *See* E.D. Tenn. L.R. 7.1(a).  For the reasons stated below, Plaintiff's motions for recusal [docs. 59, 66] will be **DENIED**, Plaintiff's motion to amend [doc. 34] will be **DENIED**, Plaintiff's motions for a TRO or preliminary injunction [docs. 9, 10] will be **DENIED**, Plaintiff's motion to recognize service [doc. 25] will be **DENIED**, and Defendants' motions to dismiss [docs. 3, 14] will be **GRANTED**.

---

[1] When not otherwise specified, citations to the record indicate documents on the record for the instant case, Case No. 2:19-cv-005.

# I.    MOTIONS TO RECUSE

Before addressing the merits of any other pending motion, the Court will first address Plaintiff's second and third motions to recuse.  In her second motion to recuse, Plaintiff contends that she has had to rely on friends to research and learn about the facts of her case, and has worked with "research teams."  [Doc. 59].  Plaintiff asserts that she has the right to associate with these research teams to assist in court matters.  Plaintiff asserts that the undersigned had no right to deny her the assistance of a research team, and the undersigned has been "hostile" against non-lawyers.  Plaintiff argues at length that the undersigned improperly gave an "exclusive monopoly" and granted "special emoluments" to bar association members, and relied on precedent created by members of state and federal bars.  In her third motion to recuse, Plaintiff reiterates these same claims, and also asserts that other judges of this Court likely hold animus against her as a non-lawyer.  [Doc. 66].

Judicial disqualification is required under 28 U.S.C. § 455(a) "in any proceeding in which [the Court's] impartiality might reasonably be questioned."  The standard for judicial disqualification is set forth in *Liteky v. United States*, 510 U.S. 540 (1994):

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. … In and of themselves (*i.e.*, apart from surrounding comments or accompanying opinion), they cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required … when  no extrajudicial source is involved.  Almost invariably, they are  proper grounds for appeal, not for recusal.  Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial

remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible. … *Not* establishing bias or partiality … are expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display. A judge's ordinary efforts at courtroom administration – even a stern and short-tempered judge's ordinary efforts at courtroom administration – remain immune.

*Id*. at 555.

The plaintiff has the burden of establishing objective evidence of bias, *i.e.*, whether a reasonable person, knowing all the surrounding circumstances, would consider the judge impartial. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 91-3822, 1992 WL 99456, at *5 (6th Cir. May 12, 1992); *United States v. Sammons*, 918 F.2d 592, 599 (6th Cir. 1990). "'Personal' bias is prejudice that emanates from some source other than participation in the proceedings or prior contact with related cases [and] … arises out of the judge's background and associations." *Sammons*, 918 F.2d at 599 (quoting *Wheeler v. Southland Corp.*, 875 F.2d 1246, 1251-52 (6th Cir. 1989)).

The undersigned is also mindful that the Sixth Circuit has cautioned that "[t]here is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988) (alteration in original) (citation omitted). In short, unnecessary recusals waste judicial resources. *City of Cleveland v. Krupansky*, 619 F.2d 576, 579 (6th Cir. 1980). Likewise, granting groundless disqualification motions also encourages judge-shopping.

To the extent that Plaintiff's second and third motions to recuse rely on the same grounds raised in her first motion to recuse, Plaintiff's motion to recuse will be denied on the same grounds as her first motion. As to Plaintiff's contention that the undersigned improperly limited Plaintiff's association with a research group, the Court did not in any way limit Plaintiff's association with any group, but merely limited the parties that could file pleadings in the instant action, after clear abuse by Plaintiff's friend, Judson Witham, after the Court denied his motion to intervene. This Court has the "inherent authority to manage [its] docket and courtrooms with a view towards the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1893 (2016). The Court was exercising this authority in limiting Mr. Witham's ability to continue filing frivolous motions in this matter. Moreover, other than the order limiting Mr. Witham's ability to file pleadings, Plaintiff's only indication of bias against non-lawyers are rulings in favor of Defendants in this matter. As the Court previously explained, disagreement with the Court's orders is insufficient to merit recusal. Accordingly, Plaintiff has not met her burden of establishing objective evidence of bias, and her motions to recuse [docs. 59, 66] will be **DENIED**. Because recusal is not warranted, the Court will now address the merits of the pending motions.

## II.     Motions to Dismiss

### a.  Background

In her *pro se* complaint, Plaintiff offers a tangled web of vague allegations against the Defendants. [Doc. 2]. Plaintiff lists the following Defendants: (1) Deutsche Bank National Trust Company, as Trustee for J.P. Morgan Mortgage Acquisition Trust

("Deutsche Bank"); (2) Chase Bank Acquisition Trust; (3) Chase Bank USA NA;[2]
(4) Premier Mortgage Funding; and (5) Select Portfolio Services.[3]  Plaintiff alleges that
the following acts of Defendants are the basis for her complaint:

(1) Defendants baited her into a subprime mortgage based on her credit information;

(2) Defendants failed to verify her employment, income, or conduct a meaningful credit history investigation when offering her a mortgage;

(3) Defendants moved her mortgage out of the United States without her knowledge;

(4) Defendants did not disclose their subprime mortgage scheme to her;

(5) Defendants falsified Real Estate Settlement Procedures Act ("RESPA") and Truth in Lending Act ("TILA") disclosures;

(6) Defendants misled her into a payment lowering scheme, causing her to default on monthly payments for 90 days; and

(7) Defendants failed to comply with written requests for records.

Plaintiff appears to allege that, through these actions, Defendants are liable under the
Racketeer Influenced and Corrupt Organizations Act ("RICO"), RESPA, TILA, and are
criminally liable for extortion and bank fraud.  [*Id.*].  Although Plaintiff does not
specifically explain this in her complaint, it appears that this matter arises out of a
foreclosure on Plaintiff's residence, located at 351 Lyons Road, Bluff City, Tennessee
(the "Property"), which resulted in her eviction from the home.

---

[2] Named Defendants Chase Bank Acquisition Trust and Chase Bank USA NA will be collectively referred to as "Chase" in this memorandum opinion.

[3] Plaintiff completes her list of defendants with "Et Al."  However, Plaintiff never identifies any other defendants by name in the body of her complaint.

As background, in 2012, Plaintiff and her then-husband, through counsel, filed a complaint in the Sullivan County Chancery Court, against Chase and Deutsche Bank, among several others, alleging that, as a result of numerous transfers of Plaintiffs' mortgage loans, Defendants no longer held any interest in the subject property, and unlawfully attempted to collect payment from Plaintiffs, clouded Plaintiffs' title, and claimed a default status as to the mortgage loan to pursue a foreclosure sale. [Case No. 2:12-cv-185, doc. 1-2]. Plaintiff and her then-husband, through counsel, also filed suit against the same defendants in the Carter County Chancery Court, raising the same allegations. [Case No. 2:12-cv-206, doc. 1-2]. Both cases were ultimately removed to federal court. [Case No. 2:12-cv-185, doc. 1; Case No. 2:12-cv-206, doc. 1]. After several motions to dismiss were filed by defendants, including Chase, Plaintiffs filed a notice of voluntarily dismissal of both cases. [Case No. 2:12-cv-185, doc. 44; Case No. 2:12-cv-206, doc. 48].

In 2016, Deutsche Bank filed suit against Plaintiff, her then-husband, Chase, and several others, in the Sullivan County Chancery Court. [Case No. 2:16-cv-19, doc. 1-1]. The case was then removed to federal court. [*Id.*, doc. 1]. In its complaint, Deutsche Bank alleged that the Property was conveyed to the Birchfields on October 25, 2006, via a warranty deed, and financed through a purchase money loan from Chase ("First Loan"), evidenced by a promissory note ("First Note"). [*Id.*, doc. 1-1]. To secure repayment of the First Loan and First Note, the Birchfields executed a purchase money Deed of Trust conveying the Property to David R. Wilson as Trustee for Chase ("First Deed of Trust"). Although somewhat unclear on the face of the complaint, it appears that the Birchfields

also executed a Second Deed of Trust to David R. Wilson, as Trustee for Chase. Deutsche Bank alleged that, by mistake, the legal description of the property in the First Deed of Trust and Second Deed of Trust correctly described Tract I of the Property, and contained the correct address, but failed to include the legal descriptions for Tracts II and III of the Property, despite the parties' intention that Tracts II and III be included. Ultimately, Chase assigned the First Deed of Trust to Deutsche Bank, which appointed Wilson & Associates, as the successor trustee. When the Birchfields defaulted under the First Loan and First Deed of Trust, Wilson & Associates conducted a non-judicial foreclosure sale, at which Deutsche Bank was the highest bidder, and Wilson & Associates conveyed the Property to Deutsche Bank via Trustee's Deed. Deutsche Bank alleges that the Trustee's Deed correctly described Tract I, and contained the correct address of the Property, but failed to include the correct legal descriptions of Tracts II and III, despite the parties' intentions to include Tracts II and III in the Trustee's Deed. As a result, Deutsche Bank sought rescission and reformation of the contracts. [*Id*.].

The Court ultimately granted summary judgment in favor of Deutsche Bank, and granted rescission of the foreclosure sale and reformation of the erroneous deeds of trust and Trustee's Deed. [*Id*., doc. 41]. The Court concluded that the exclusion of Tracts II and III in these documents was due to mutual mistake, noting that the Birchfields conceded that they intended to include all three tracts of land in the deeds of trust. [*Id*.].

Thereafter, in October 2018, Ms. Birchfield filed a *pro se* petition for Chapter 7 bankruptcy. [Case No. 2:18-bk-51800, doc. 1]. In her petition, Ms. Birchfield stated that she was claiming a homestead exemption of more than $160,375, and wrote "disputed

residential domicile" to the side of the questionnaire. [*Id.* at 23]. Additionally, in listing her secured claims on the petition, Ms. Birchfield listed Chase Bank as a creditor, as to the Property, and stated that the claim was disputed. [*Id.* at 25].

During her bankruptcy proceeding, Plaintiff began filing motions reminiscent of those filed in the instant case, starting with a Demand for Production of Proof of Standing and Loan Servicing Agreements. [*Id.*, doc. 18]. In this motion, Plaintiff stated that, in August 2018, she sent a "qualified written request" demanding production of evidence to Select Portfolio Services, Chase, and Deutsche Bank, but received no response. [*Id.* at 2-3]. Plaintiff claimed that the RESPA required these parties to acknowledge receipt of her "qualified written request" and provide answers within certain time frames. [*Id.* at 4]. Plaintiff also referenced alleged duties of those parties under the TILA. [*Id.*]. Plaintiff asserted that the debt collectors at issue had never proven their genuine ownership of the alleged debt or their standing to sue or foreclose on the Property. [*Id.* at 11]. The bankruptcy court ultimately denied this motion. [*Id.*, doc. 27].

Plaintiff then filed a motion, demanding production of records, and asking the court to take notice of the predatory subprime loan at issue, police raids of Deutsche Bank, and fines levied against Deutsche Bank. [*Id.*, doc. 34 at 1]. Plaintiff again mentioned the "qualified written requests" and stated that Premier Mortgage Funding, Deutsche Bank, Chase, Select Portfolio Services, and others had engaged in unlawful servicing and collecting activities. [*Id.* at 2-3]. Plaintiff further asserted that the mortgage on the Property was void for fraud because it began as an unlawful predatory subprime mortgage. [*Id.* at 4].

Deutsche Bank then filed a motion for relief from the automatic stay provisions of the bankruptcy code. [*Id*., doc. 32]. Deutsche Bank asserted that the foreclosure sale of the Property was conducted on August 23, 2018, and, after the Property was sold to Deutsche Bank, a Substitute Trustee's Deed was executed on August 27, 2018. [*Id*. at 3]. Thus, Deutsche Bank asserted that, when Plaintiff filed her bankruptcy action on October 23, 2018, she did not hold a legal or equitable interest in the Property, and thus, the Property should not be considered part of the bankruptcy estate. [*Id*.].

Plaintiff objected to the motion, labeling it "fraudulent." [*Id*., doc. 42 at 1]. Plaintiff stated that the mortgage was obtained by deception and fraud, and therefore, was a contract against public policy. [*Id*. at 1-2]. Plaintiff also stated that the mortgage was fraudulent and not enforceable because Premier Mortgage Funding concealed the "Improper, Unlawful, Predatory and Deceptive DISBURSEMENTS" on its RESPA statement. [*Id*. at 2]. Plaintiff contended that subprime predatory mortgages and falsified RESPA disbursement disclosures voided mortgages where such deceptions were employed. [*Id*. at 5]. Plaintiff further stated that the alleged false loan disbursement statements violated the TILA. [*Id*.].

After a hearing on the motion, the bankruptcy court entered an order stating that any opposition to the motion was either withdrawn or overruled at the hearing. [*Id*., doc. 46 at 1-2]. The bankruptcy court granted Deutsche Bank's motion, concluding that the Property was never property of the bankruptcy estate, and Deutsche Bank was free to proceed with its state law remedies against the Property. [*Id*. at 2]. In a separate order,

the bankruptcy court denied Plaintiff's motion demanding production of documents. [*Id.*, doc. 48]. The bankruptcy court then entered a final order of discharge. [*Id.*, doc. 52].

In the instant case, Chase has filed a motion to dismiss, arguing that Plaintiff's claims are barred by *res judicata* and fail to state a claim upon which relief may be granted. [Doc. 4 at 6, 8]. As to *res judicata*, Chase contends that Plaintiff's arguments would have been compulsory counterclaims in the lawsuit initiated by Deutsche Bank, No. 2:16-cv-19, but Plaintiff failed to raise it at that time. [*Id.* at 7]. As to failure to state a claim, Chase contends that Plaintiff's claims are unsupported, hypothetical claims. [*Id.* at 8]. As to her RICO claims, Chase argues that Plaintiff has failed to articulate with any specificity how any actions of Chase amounted to "racketeering activity" or how such directly affected her. [*Id.* at 9]. Finally, as to Plaintiff's RESPA claims, Chase contends that the RESPA only applies to loan servicers, and Plaintiff has not alleged that Chase is a servicer, nor has Plaintiff alleged any damages in connection to this claim as to Chase. [*Id.* at 10].

Plaintiff responds that this case is not ripe for dismissal under Rule 12(b)(6). [Doc. 5 at 2]. Plaintiff contends that her pleading is plausible in light of various fines and penalties that Plaintiff alleges the government has leveled against the Defendants. [*Id.* at 6]. Plaintiff contends that *res judicata* does not apply, because Defendants fraudulently concealed the instant causes of action. [*Id.* at 13]. Plaintiff further reiterates many of the allegations of her complaint.

Chase replies that Plaintiff's response fails to cure the complaint's deficiencies, namely, that Plaintiff has failed to allege with any level of specificity the details

necessary to support any of the causes of action. [Doc. 6 at 1]. Chase asserts that the complaint, and Plaintiff's response to the motion to dismiss, are replete of any details regarding Plaintiff's own mortgage, the only issue on which she has standing to sue. [*Id*. at 2]. Regarding *res judicata*, Chase asserts that Plaintiff's argument that there are newly discovered causes of action fails in the face of Plaintiff's own documents, which do not sufficiently articulate any plausible cause of action. [*Id*. at 3].

Plaintiff has also filed an unauthorized sur-reply, *see* E.D. Tenn. L.R. 7.1(d), arguing that full discovery should be ordered because Defendants have gone to great lengths to secret their "racketeering activities." [Doc. 7 at 3]. Plaintiff also contends that Federal Rule of Civil Procedure 8(a) only requires notice of the claim, and proof is not required until after discovery. [*Id*. at 5].

Defendants Deutsche Bank and Select Portfolio Services have also filed a motion to dismiss, raising many of the same arguments raised by Chase. [Doc. 15]. These defendants argue that all of Plaintiff's claims have been, or should have been, litigated in the prior lawsuits, and thus, the claims are barred by *res judicata*. [*Id*. at 5-6]. Additionally, these defendants contend that the allegations regarding RICO, RESPA, fraud, and invalidity of the underlying security interests held by Chase and Deutsche Bank are compulsory counterclaims under Rule 13(a) because they arose out of the same transaction or occurrence, and therefore, should have been brought in No. 2:16-cv-19. [*Id*. at 7]. These defendants further argue that Plaintiff has failed to state a RICO claim, because she fails to specify how any actions of Defendants amount to "racketeering activity" or how they directly affected her. [*Id*. at 8]. The defendants then contend that

Plaintiff has failed to state a RESPA claim because the only semi-factual allegation is that Defendants failed to provide records required by the RESPA, but this allegation is blatantly false. [*Id*. at 9-10]. Plaintiff did not respond to this motion to dismiss, and the time for doing so has long passed. *See* E.D. Tenn. L.R. 7.1(a).

**b. Standard of Review**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint may be dismissed for failure to state a claim if a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion, a court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party. *DIRECTTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, the Court "need not accept as true legal conclusions or unwarranted factual inferences, and [c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (internal citations and quotation marks omitted). Dismissal under Rule 12(b)(6) "is proper when there is no set of facts that would allow the plaintiff to recover." *Carter by Carter v. Cornwell*, 983 F.2d 52, 54 (6th Cir. 1993); *see also Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005) ("To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.").

**c. Analysis**

### i. *Res Judicata*

A claim is barred by the doctrine of *res judicata* if the following elements are present: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Bittinger v. Tecumseh Prods. Co.*, 123, F.3d 877, 880 (6th Cir. 1997).

### 1. Final Judgments

Finality "is considered in a more pragmatic and less technical way in bankruptcy cases than in other situations." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 578 (6th Cir. 2008) (quoting *Lindsey v. O'Brien, Tanksi, Tanzer & Young Health Care Providers of Conn.*, 86 F.3d 482, 488 (6th Cir. 1996)) (internal quotation marks omitted). Thus, when an order in a bankruptcy cases "finally dispose[s] of discrete disputes within the larger case, it may be appealed immediately." *Id.* (quoting *Lindsey*, 86 F.3d at 488) (internal quotation marks omitted) (alteration in original). Accordingly, a bankruptcy court's order overruling a debtor's objection to claims is a final order, because it ends litigation on the merits and leaves nothing for the court but execution of the judgment. *Morton v. Morton*, 298 B.R. 301, 303 (6th Cir. BAP 2003).

As Defendants concede, Plaintiff's 2012 lawsuits (Case Nos. 2:12-cv-185, 2:12-cv-206) were both voluntarily dismissed, and thus, do not involve final decisions on the merits for purposes of *res judicata*. However, the Court's grant of summary judgment in favor of Deutsche Bank in No. 2:16-cv-19 is clearly a final judgment for

purposes of *res judicata*. *See In re City of Detroit*, 531 B.R. 171, 174 (E.D. Mich. 2015) ("A summary judgment constitutes a 'final decision on the merits' for res judicata purposes.") (citing *Helfrich v. Metal Container Corp.*, 11 F. App'x 574, 576 (6th Cir. 2001)). Additionally, with regard to Plaintiff's bankruptcy proceeding, at the very least, the bankruptcy court's decision to overrule Plaintiff's objections to Deutsche Bank's motion for relief from the automatic stay provisions of the bankruptcy code constitutes a final decision on the merits. *See Morton*, 298 B.R. at 303. Accordingly, the Court concludes that the first element of *res judicata* is met as to the prior litigation in No. 2:16-cv-19 and the relevant portion of the bankruptcy proceeding.

### 2. Same Parties Involved

As to No. 2:16-cv-19, Ms. Birchfield, Deutsche Bank, and Chase were all named parties in the action. Because these two parties were specifically named, the second element is clearly met as to Deutsche Bank and Chase with regard to that action. Moreover, although Select Portfolio Services was not a named party in No. 2:16-cv-19, *res judicata* bars not only the same parties, but also those in privity with the parties, from bringing suit later. *Sanders Confectionary Prods., Inc. v. Heller Financial, Inc.*, 973 F.2d 474, 481 (6th Cir. 1992). "Privity in this sense means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Id.* It appears to the Court that Select Portfolio Services was a loan servicer to Deutsche Bank. [Doc. 15 at 6]. A loan servicer who takes over servicing duties from a creditor is a successor in interest, and thus, in privity with the creditor for *res judicata* purposes. *Chapman v. JPMorgan Chase Bank, N.A.*, 651 F. App'x 508, 510

14

(6th Cir. 2016). Thus, Select Portfolio Services is a party in privity with Deutsche Bank, and the second element of *res judicata* is met as to all parties, relating to No. 2:16-cv-19.

Likewise, with regard to Plaintiff's prior bankruptcy action, entities such as creditors and equity security holders in the debtor should be considered parties for *res judicata* purposes, because the Bankruptcy Code contains a strong preference for final resolution of all claims involving the debtor. *Sanders Confectionary*, 973 F.2d at 480-81. The Court concludes that Chase and Deutsche Bank, Plaintiff's creditors, and Select Portfolio Services, a loan servicer for Deutsche Bank, all qualify as "parties" to Plaintiff's prior bankruptcy action, in light of this definition of "parties." Thus, the second element of *res judicata* is met as to Plaintiff's prior bankruptcy action.

### 3. Claims Were, or Should Have Been, Raised Previously

Under Federal Rule of Civil Procedure 13(a), counterclaims that arise out of the same transaction or occurrence as the opposing party's claim and do not require adding another party over whom the court cannot acquire jurisdiction are compulsory counterclaims. Fed. R. Civ. P. 13(a)(1). The rule provides exceptions if (a) when the action was commenced, the claim was the subject of another pending action; or (b) the opposing party sued on its claim by attachment or other process that did not establish personal jurisdiction over the pleader on that claim, and the pleader does not assert any counterclaim under Rule 13(a). Fed. R. Civ. P. 13(a)(2).

Plaintiff's claims in the instant action were clearly compulsory counterclaims under Rule 13(a) in No. 2:16-cv-19. All of Plaintiff's allegations relate to the validity of the mortgage on, and subsequent foreclosure of, the Property. Because the subject matter

of Deutsche Bank's claims in No. 2:16-cv-19 were directly related to the validity of the First and Second Deeds of Trust, and the subsequent Trustee's Deed that stemmed from the foreclosure on the Property, Plaintiff's allegations that the mortgage and foreclosure were illegal and invalid were necessary counterclaims that arose out of the same transaction or occurrence. Moreover, Plaintiff would not have needed to add another party over which the Court could not have acquired jurisdiction, as evidenced by the acquisition of jurisdiction in the instant action. Finally, none of the exceptions to Rule 13(a) apply. Accordingly, Plaintiff's claims were compulsory counterclaims in No. 2:16-cv-19, and thus, should have been raised in that action. The third element of *res judicata* is met as to No. 2:16-cv-19.

Additionally, bankruptcy courts have original jurisdiction over all claims arising under the Bankruptcy Code, 28 U.S.C. § 1334(b), and such "core" proceedings either invoke a substantive right created by federal bankruptcy law or could not exist outside of the bankruptcy. *Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002) (quoting *Sanders Confectionary Prods., Inc.*, 973 F.2d at 483). However, even though a bankruptcy court does not have jurisdiction to reach a final decision on a non-core claim, it nevertheless, "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," and, in such situation, shall "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the judge." *Browning*, 283 F.3d at 773 (quoting 28 U.S.C. § 157(c)(1)) (internal quotation marks omitted). Thus, *res judicata* may apply to a non-core claim, even though the claim could not have been finally adjudicated by the bankruptcy court. *Id*. A claim is

"related to" the bankruptcy proceeding if "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* (quoting *Sanders Confectionary*, 973 F.2d at 482). Plaintiff clearly could have, and indeed did, raise the instant claims as non-core claims in her bankruptcy proceeding. Nearly all of Plaintiff's instant claims were raised, in some manner, in her motions seeking disclosures during the pendency of her bankruptcy proceeding, each of which the bankruptcy court denied. Because Plaintiff could have, and indeed did, raise these claims in her bankruptcy proceeding, the third element of *res judicata* is present as to the underlying bankruptcy proceeding.

### 4. Identity of Claims is Present

The identity of claims element "is satisfied if 'the claims arose out of the same transaction or series of transactions" or if the "claims arose out of the same core of operative facts." *Browning*, 283 F.3d at 773-74 (internal quotation marks omitted). As the Court previously explained, Plaintiff's instant claims stem out of the mortgage and subsequent foreclosure on the Property, which was also the subject of No. 2:16-cv-19, and the subject of Deutsche Bank's motion for relief from the stay provisions in Plaintiff's bankruptcy action. Because the claims all arose out of the same core of operative facts, the final element of *res judicata* is present as to both No. 2:16-cv-19 and the bankruptcy proceeding.

### 5. Concealment of Claims

Plaintiff alleges that *res judicata* should not apply because Defendants wrongfully concealed the issues at hand. The Sixth Circuit has addressed claims of "wrongful

concealment" in the *res judicata* context with reference to the standards for "fraudulent concealment" in the statute of limitations context. *Browning*, 283 F.3d at 770. To invoke the doctrine of fraudulent concealment, a Plaintiff must show "affirmative concealment" and "mere silence or unwillingness to divulge wrongful activities is not sufficient." *Id*. (citing *Helmbright v. Martins Ferry*, No. 94-4089, 1995 WL 445730, at *1 (6th Cir. 1995)).

In the instant case, Plaintiff's allegations that Defendants have attempted to conceal the claims she presently raises do not meet this standard. Plaintiff has made no specific allegations of affirmative concealment on the part of Defendants. Rather, Plaintiff's allegations essentially contend, in a generalized fashion, that Defendants failed to disclose their subprime mortgage scheme to her. This is precisely the type of "mere silence or unwillingness to divulge" that cannot suffice to invoke the wrongful concealment defense to res judicata. Moreover, the record is clear that Plaintiff did in fact learn of her claims, at least by the time of her bankruptcy proceeding, as she raised many of the same allegations before the bankruptcy court. Accordingly, the Court concludes that Plaintiff's claims are not saved from the doctrine of *res judicata* by her allegation of wrongful concealment.

### 6. Conclusion

In sum, each of the elements of *res judicata* is present as to both No. 2:16-cv-19 and Plaintiff's previous bankruptcy proceeding. Moreover, the doctrine of wrongful concealment does not save Plaintiff's claims. Accordingly, the Court finds that all of

Plaintiff's instant claims are barred by the doctrine of *res judicata*, and the case will be dismiss as to Defendants Chase, Deutsche Bank, and Select Portfolio Services.

### ii. Failure To State a Claim

In the alternative, the Court also finds that Plaintiff's complaint is due to be dismissed for failure to state a claim on which relief can be granted. Under Federal Rule of Civil Procedure 9(b), if a plaintiff alleges fraud or mistake, she "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The Sixth Circuit has stated that Rule 9(b) requires a plaintiff to "allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (quoting *Yuhasz*, 341 F.3d at 563)) (internal quotation marks omitted). In other words, Rule 9(b) requires a Plaintiff specify the "who, what, when, where, and how" of the alleged fraud. *Id*. Rule 9(b)'s heightened pleading standard applies to RICO claims that involve allegations of fraud. *Justice v. Nelson*, No. 3:19-cv-185, 2019 WL 6971371, at *1 (E.D. Tenn. Dec. 19, 2019). Because it is clear from the face of her complaint that all of Plaintiff's claims are based on alleged fraud, her pleading is required to meet the heightened pleading standards of Rule 9(b). However, Plaintiff's complaint lacks any detail about the alleged fraud, other than nonsensical and conclusory statements. Plaintiff's complaint fails to even mention the circumstances of the foreclosure on her home, which appear to be the underlying fact of her complaint. Accordingly, the Court finds that Plaintiff's complaint is due to be dismissed as to Defendants Chase, Deutsche

Bank, and Select Portfolio Services for failure to meet the heightened pleading standard of Rule 9(b).

Plaintiff also fails to plead necessary elements of her purported RESPA claim. It appears that Plaintiff attempts to assert a claim for a violation of the RESPA under § 2605.

> A borrower can sue a servicer under § 2605 for failure to disclose whether loan servicing rights may be transferred. Section 2605 requires that a borrower be notified of certain loan servicing transfers and receive certain information upon request. Subsection (e) of § 2605 specifically requires "any servicer of a federally related mortgage loan" to respond to a "qualified written request" (a "QWR") from the borrower that seeks "information relating to the servicing" of the loan.

*Hutchens v. Bank of America N.A.*, 3:11-cv-624, 2012 WL 1618316, at *5 (E.D. Tenn. May 9, 2012) (internal citations omitted). Only "servicers" of federally related mortgage loans are bound by the RESPA to respond to QWRs, and failure to plead that a defendant is a loan servicer will defeat a plaintiff's cause of action under the RESPA, because she has not established that liability is plausible. *Id.* Because Plaintiff does not assert that any of the defendants are loan servicers, her complaint fails under the general pleading standards of Federal Rule of Civil Procedure 8 as to any RESPA claim.

Moreover, to the extent that Plaintiff alleges that Defendants have violated various criminal statutes, Plaintiff cannot bring criminal charges against Defendants because criminal actions in federal courts are initiated by the United States Attorney and cannot be brought by the Court or a *pro se* Plaintiff in a civil action. *Copeland v. Donahue*, No. 5:12CV0541, 2012 WL 6738699, at *5 (N.D. Ohio, Dec. 29, 2012) (citing 28 U.S.C. § 547; Fed. R. Crim. P. 7(c)).

For all these alternative reasons, Plaintiff has failed to state a claim upon which relief can be granted, and the Court will therefore **GRANT** Defendants Chase, Deutsche Bank, and Select Portfolio Services' Motions to Dismiss [docs. 3, 14].

### III.    Motion to Amend

In her motion to amend, Plaintiff asserts that she attempted to file appellate papers in the circuit court in Bristol, Tennessee, but the court clerks refused to accept the appellate papers unless a "litigation tax" was paid. [Doc. 34]. Plaintiff contends that this action violated her due process and equal protection rights, and she moves to add the clerks of the Sullivan County Court as defendants in this action. [*Id.*].

After a responsive pleading or Rule 12(b)(6) motion has been served, a party may move for leave to amend a complaint by leave of the Court. Fed. R. Civ. P. 15(a). Under Rule 15(a)(2), a "court should freely give leave [to amend] when justice so requires." *Id.* The Court, however, must balance the harm to the moving party if he is not permitted to amend against the prejudice caused to the other party if leave to amend is granted. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Specifically, "[a] motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (citation omitted). Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss. *Miller v. Calhoun County*, 408 F.3d 803, 817 (6th Cir. 2005).

"It is well established that judges are entitled to absolute judicial immunity from suits for money damages for all actions taken in the judge's judicial capacity, unless these actions are taken in the complete absence of any jurisdiction." *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994). This absolute judicial immunity also extends to non-judicial offers who perform "quasi-judicial" duties. *Id*. This quasi-judicial immunity "extends to those persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune." *Id*. The Supreme Court has developed a "functional" approach for determining whether an official is entitled to absolute immunity, and the court must look to the nature of the function performed, rather than the identity of the actor who performed it. *Id*. (internal quotation marks omitted).

The court clerks' task of mailing transcripts to indigent prisoners, so that they can appeal their convictions, is a judicial act for purposes of quasi-judicial immunity. *Yabrough v. Garrett*, 579 F. Supp. 2d 856, 860 (E.D. Mich. 2008) (citing *Lyle v. Jackson*, 49 F. App'x 492, 494 (6th Cir. 2002)). A court clerk's "discretion to review documents, interpret rules, and determine whether they comply with the procedural rules, is precisely the kind of juridical act entitled to immunity." *Petersen v. Garett*, No. 04-60196, 2007 WL 465732, at *3 (E.D. Mich. Feb. 6, 2007). Moreover, a court clerk "performs quasi-judicial duties when he accepts and dockets filings; and is therefore immune from suit relating to these quasi-judicial duties." *Shavers v. Liefer*, No. 1:06-cv-196, 2006 WL 1360965, at *1 (W.D. Mich. May 15, 2006) (citing *Bradley v. United States*, 84 F. App'x 492, 493 (6th Cir. 2003)).

In light of this case law, the Court concludes that the Sullivan County court clerks perform quasi-judicial duties in determining whether documents filed in the court comply with procedural rules, including rules relating to the payment of fees. Because such is a quasi-judicial duty, the Sullivan County court clerks are entitled to absolute quasi-judicial immunity from suit in this regard. Accordingly, any amendment of Plaintiff's complaint to add her proposed claims against the Sullivan County court clerks would be futile, and the Court will accordingly **DENY** the motion to amend [doc. 34].

### IV.    Miscellaneous Motions

Several other motions filed by Plaintiff remain pending before the Court. Although these motions are now moot as to Defendants Chase, Deutsche Bank, and Select Portfolio Services, based on the Court's grant of these Defendants' motions to dismiss, the Court will nevertheless address these motions as they relate to the remaining Defendant, Premier Mortgage Funding.

First, Plaintiff moves for a temporary restraining order ("TRO") against the Defendants, asserting that they were pursuing "POLICE ACTION against Your Plaintiff to have Her put in the Street and Made Homeless," which she asserted would cause her irreparable harm. [Doc. 9 at 3]. Plaintiff later states that Defendants should be prevented from evicting her from her family home. [*Id*. at 4]. The Court will **DENY** Plaintiff's request for a TRO. First, according to more recent filings, it appears that Plaintiff has already been evicted from the Property, and thus, the Court has no power to restrain Defendant Premier Mortgage Funding from seeking such eviction. Moreover, Federal Rule of Civil Procedure 65 only permits the Court to issue a temporary restraining order

if "*specific facts* in the affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition[.]" Fed. R. Civ. P. 65(b)(1) (emphasis added). As noted previously, neither Plaintiff's complaint, nor her motion for a TRO, contain *specific* facts, but rather, contain generalized and conclusory allegations against all Defendants collectively. Additionally, Plaintiff's eviction from her home, after foreclosure, is not the type of irreparable injury that a TRO is intended to prevent. Accordingly, a TRO is not warranted, and the Court will **DENY** the motion [doc. 9].

In a separate motion, Plaintiff seeks a TRO and a permanent injunction on the same grounds as her previous motion. The Court will **DENY** Plaintiff's request for a TRO in the second motion for the same grounds as it will deny the first motion. Additionally, the Court concludes that Plaintiff intended to request a "preliminary injunction" rather than a "permanent injunction," as a permanent injunction would only be applicable after a ruling on the merits of the case. The first element a Plaintiff must establish in seeking a preliminary injunction is that there is a strong likelihood that she will succeed on the merits. *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). For the same reasons explained above, Plaintiff has not shown any likelihood of success on the merits in her case against Defendant Premier Mortgage Funding. Accordingly, the Court will **DENY** Plaintiff's motion for a TRO and preliminary injunction [doc. 10].

Finally, Plaintiff moves for the Court to recognize service on Defendants, take notice of facts, and order discovery in this matter. [Doc. 25]. Because the remaining defendant, Premier Mortgage Funding, appears to have been properly served at this

juncture, the Court will **DENY** Plaintiff's request to recognize service as moot. The Court will further **DENY** Plaintiff's request to take judicial notice of facts, finding that such would not be proper at this point in the litigation. Furthermore, the Court will **DENY** Plaintiff's request to order discovery. At this stage in the litigation, Plaintiff has filed an application for entry of a clerk's default against Premier Mortgage Funding, based on its failure to respond to the complaint within the time outlined by the Federal Rules of Civil Procedure. Should Defendant Premier Mortgage Funding make an appearance in this matter, discovery should proceed as normal under the Court's scheduling order. However, a separate order requiring Premier Mortgage Funding to engage in discovery at this stage in the litigation would merely create confusion. Accordingly, the Court will **DENY** Plaintiff's motion [doc. 25].

## V.     Conclusion

For the reasons stated herein, Plaintiff's motions for recusal [docs. 59, 66] will be **DENIED**, Plaintiff's motion to amend [doc. 34] will be **DENIED**, Plaintiff's motions for a TRO or preliminary injunction [docs. 9, 10] will be **DENIED**, Plaintiff's motion to recognize service [doc. 25] will be **DENIED**, and Defendants' motions to dismiss [docs. 3, 14] will be **GRANTED**. This matter will be dismissed as to Defendants Chase, Deutsche Bank, and Select Portfolio Services. An order consistent with this opinion will follow.

_s/ Leon Jordan_
United States District Judge
